UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TINA KOONTZ, As Natural Guardian
for JESSICA SORENSEN,

    Plaintiff,

-vs-                                        Case No.    5:09-cv-147-Oc-10GRJ

KATHERINE DUSTIN, in her individual
and official capacities, and THE SCHOOL
BOARD OF SUMTER COUNTY, FLORIDA,

    Defendants.
                                                         /

**ORDER DETERMINING CROSS MOTIONS
FOR SUMMARY JUDGMENT**

This case involves the constitutionality of a search - - or threatened search - - of an eighth grade school student by her principal at a public school. The Plaintiff alleges a violation of the Fourth and Fourteenth Amendments, and brings suit under 42 U.S.C. § 1983 seeking nominal damages, injunctive relief and attorneys fees.

The Court has uncontested jurisdiction, and venue lies in this District and in this Division.

The parties have filed cross motions for summary judgment under Rule 56, and the Court has determined that there is no genuine issue of material fact foreclosing summary disposition. The case has been thoroughly briefed, oral argument has been heard, and the matter is ready for decision.

The Facts

On Monday, October 27, 2008, at the Sumter Middle School, Sumter County, Florida, the Plaintiff[1] boarded her assigned Sumter County school bus at the end of the school day to be taken home. She was 13 years old and in the eighth grade. The bus was being driven by Ms. Dana Orr. After initially loading the bus and departing the school grounds, Ms. Orr was notified by cell phone that she should return to the school to collect some additional student passengers. She did so. While parked at the bus loading area at the school, Ms. Orr overheard a boy on the bus say to someone that he, the boy, had a bomb in his book bag.[2]

Upon hearing that remark, Ms. Orr reported it to Mr. Lorenzo Fields, Assistant Principal, who was in the area observing the loading and departure of the buses. Ms. Orr identified the subject male student to Mr. Fields who then withdrew the boy from the bus for questioning. The student did not dispute having made the statement about having a bomb but denied actual possession of any explosive device. A search of his person and his book bag proved uneventful; no bomb was found. Nonetheless, Mr. Fields notified the Principal, Katherine Dustin about what had happened, and she came from her office to the school bus area within a few minutes.[3]

---

[1] The case was brought by Tina Koontz as Guardian for, and mother of, Jessica Sorensen. The term "Plaintiff" will be used to refer to the child, Jessica.

[2] There is some inconsistency in the record as to whether Ms. Orr overheard the statement or was told about it by another student on the bus. Either way, there is no dispute that the statement was made. The manner of its communication to Ms. Orr is immaterial.

[3] Mr. Fields had also attempted to communicate with the school resource officer, Deputy Greenwood, but he had already left the school for the day. Neither Ms. Dustin nor Mr. Fields made any other effort to notify law enforcement officials or trained bomb detection personnel before proceeding to search the students on the bus. The court does not consider that fact to be of any

2

Upon arrival at the scene, Ms. Dustin learned from Mrs. Fields that the boy admitted saying that he had a bomb but denied the truth of the statement, and a search of his person and book bag had proved fruitless. Ms. Dustin concluded from Mr. Fields' report that the boy's claim to have possession of a bomb was not credible. Nevertheless, she then boarded the bus. Her undisputed testimony about that is:

> A   I think I was the one that stepped onto the bus. I spoke with the students on the bus and told them that he had admitted to making the bomb threat, that he wasn't accusing anybody else, and we wanted to make sure there was nothing that had been placed anywhere either in their stuff or on the bus before sending them home.
>
> * * * *
>
> A   I told them that we were going to have them get off the bus and look through their book bags, purses, et cetera, and get - - and to make sure that there wasn't anything that had been placed there.
>
> Q   So how long after you made that announcement was it before the searching began?
>
> A   Relatively - - I'd asked the bus driver to check seat to seat, between the seats. We had the students get off in single file line. I asked them to get off in single file line, and we went student to student. So within a minute or so probably.
>
> Q   And where did you conduct these searches?
>
> A   Between the bus and the school building where it was parked near.

---

importance with respect to the constitutionality, or unconstitutionality, of the searches.

3

When Ms. Dustin reached the Plaintiff, who was among the last of the students waiting to be searched,[4] the Plaintiff refused. Ms. Dustin then warned the Plaintiff that she could not be permitted to get back on the bus without being searched and that her refusal would be a disciplinary matter. The Plaintiff persisted in her refusal and her book bag and purse were not searched; they remained undisturbed and in her possession at all times. The Plaintiff and the boy who had claimed to have a bomb were then separately escorted to the school office and their respective parents were called to come take them home. In the meantime, Ms. Orr had completed her fruitless search of the bus itself, and the remainder of the students reboarded for departure to their homes. The Plaintiff's father came to the school and the Plaintiff accompanied him off the grounds.

Later in the afternoon that same day, Ms. Dustin and Mr. Fields completed a School Conduct Report concerning the Plaintiff. Under the heading "Description Of Misbehavior," Ms. Dustin said:

> Another student on Jessica's bus made a bomb threat. In order to ensure that the bus students and their belongings were safe, the bus and all students and their belongings were searched. Jessica refused. I told her that I needed to be able to search her book bag and purse in order to clear her and that by refusing it would be a discipline issue. She refused, so the bus left without her and I called her home.

Under the heading "Action Taken By Administration," signed by Mr. Fields with the concurrence of Ms. Dustin, a check mark was placed by the entry "Assigned to In-

---

[4] The record does not disclose the exact number of students who were searched. The Plaintiff testified, however, that there were usually 40 to 50 children aboard. Ms. Orr testified to the same effect.

4

School suspension 2 days," followed by the notation: "Wednesday 10-29 through Thursday 10-30-08."

An appeal was taken by the Plaintiff to the School Board's Superintendent of Schools concerning her in-school suspension. The appeal was denied and that was the final decision on the issue.

The Defendants emphasize that the Plaintiff lost no time or instruction in school, that her grades were unaffected,[5] and that the record of her in-school suspension is not subject to disclosure to anyone (such as colleges or universities) seeking a copy of her transcript.

### The Law

It is appropriate to begin the legal analysis of the case by first taking up the Defendant's argument that there was no constitutional violation of the Plaintiff's rights because (1) there was no search, and/or (2) the Plaintiff suffered no cognizable injury. Neither argument is persuasive.

To be sure, the Plaintiff was not subjected to a physical search, but her refusal - - according to Ms. Dustin's express warning at the time - - resulted in a "disciplinary" in school suspension. For purposes of constitutional analysis, therefore, the case should be treated as though the threatened search had occurred. Only in that way can it be determined whether the Plaintiff had a right to refuse the search on constitutional grounds and, if so, whether the penalty imposed was valid or invalid. "It has long been established that a State may not impose a penalty upon those who

---

[5] The Plaintiff was a straight A student before the incident and remained so afterward.

exercise a right guaranteed by the Constitution. Constitutional rights would be of little value if they could be indirectly denied, or manipulated out of existence." Harman v. Forssenius, 380 U.S. 528, 540, 85 S. Ct. 1177, 1185 (1965) (internal citations and quotations omitted).

Similarly, the fact that the Plaintiff suffered no substantial injury in terms of loss of school time, reduction in her grades, or an adverse notation in her public school record, is of no import. Anyone who suffers a constitutional infringement by a state actor is entitled, for that reason alone, to an award of nominal damages without proof of actual injury. Carey v. Piphus, 435 U.S. 247, 98 S. Ct. 1042 (1978); Fassett ex rel. Fassett v. Haeckel, 936 F.2d 118 (2d Cir. 1991) (Fourth Amendment claim). And, here, the Plaintiff is seeking precisely that - - an award of nominal damages.

In New Jersey v. T.L.O., 469 U.S. 325, 105 S. Ct. 733 (1985), the Court settled the law that school children enjoy the protection of the Fourth Amendment against unreasonable searches and seizures, and that public school administrators are state actors in carrying out searches on school grounds. The Court also held, however, that such searches need not be justified by the usual standard of probable cause to believe that the subject of the search has violated or is violating the law. Rather, the constitutionality of a search of a student depends on its reasonableness under all of the circumstances. Accordingly, reasonable suspicion will ordinarily justify a warrantless search aimed at finding evidence of a violation of the law or school rules.

The Plaintiff relies almost exclusively upon T.L.O. and argues that Ms. Dustin had no reasonable suspicion that the Plaintiff possessed a bomb when Ms. Dustin

6

attempted to search her. On the contrary, Plaintiff contends, Ms. Dustin had already satisfied herself that the bomb threat was not a credible one. The Plaintiff concludes, therefore, that the threatened search was unconstitutional and that she had a right to refuse it without penalty.

The Court concludes that the Plaintiff's reading and application of T.L.O. is too restricted. While it is clear that a search of a targeted student for the purpose of discovering evidence of a crime or violation of school rules must be supported by reasonable suspicion, the Court in T.L.O. was careful to exclude any articulation of the specific standard to be applied to searches conducted in other contexts.

Specifically, the Court said:

> We do not decide whether individualized suspicion is an essential element of the reasonableness standard we adopt for searches by school authorities. In other contexts, however, we have held that although 'some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure. . . the Fourth Amendment imposes no irreducible requirement of such suspicion.' (Citations Omitted) (Emphasis Supplied)
>
> * * * * *
>
> Because the search of T.L.O.'s purse was based upon an individualized suspicion that she had violated school rules . . . we need not consider the circumstances that might justify school authorities in conducting searches unsupported by individualized suspicion.

469 U.S. at 342, n.8, 105 S. Ct. at 743, n.8.

More recently, in Vernonia School District 47J v. Acton, 515 U.S. 646, 115 S. Ct. 2386 (1995), and Board of Education of Independent School District No. 92 of Pottawatomic County v. Earls, 536 U.S. 822, 122 S. Ct. 2559 (2002), the Court held

7

that searches consisting of drug testing of students wishing to engage in extracurricular activities were reasonable in furtherance of the school's interest in deterring drug use; such searches did not require individualized suspicion that any particular student was engaged in drug abuse. The following passage from the Court's opinion in Earls is especially instructive with respect to this case:

> Given that the School District's Policy is not in any way related to the conduct of criminal investigations, see Part II-B, infra, respondents do not contend that the School District requires probable cause before testing students for drug use. Respondents instead argue that drug testing must be based at least on some level of individualized suspicion. See Brief for Respondents 12-14. It is true that we generally determine the reasonableness of a search by balancing the nature of the intrusion on the individual's privacy against the promotion of legitimate governmental interests. See Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979). But we have long held that 'the Fourth Amendment imposes no irreducible requirement of [individualized] suspicion.' United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S. Ct. 3074, 49 L.Ed.2d 1116 (1976). '[I]n certain limited circumstances, the Government's need to discover such latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion.' Von Raab, supra, at 668, 109 S. Ct. 1384; see also Skinner, supra, at 624, 109 S. Ct. 1402. Therefore, in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable 'when "special needs beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."' Griffin v. Wisconsin, 483 U. S. 868, 873, 107 S. Ct. 3164, 97 L.Ed.2d 709 (1987) (quoting T.L.O., supra, at 351 105 S. Ct. 733 (Blackman, J., concurring in judgment)); see also Vernonia, supra, at 653, 115 S. Ct. 2386; Skinner, supra, at 619, 109 S. Ct. 1402.
>
> Significantly, this Court has previously held that 'special needs' inhere in the public school context. See Vernonia,

8

>supra, at 653, 115 S. Ct. 2386; T.L.O., supra, at 339-340, 105 S. Ct. 733. While schoolchildren do not shed their constitutional rights when they enter the schoolhouse, see **2565 Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969), 'Fourth Amendment rights . . . are different in public schools than elsewhere; the "reasonableness" inquiry cannot disregard the schools' custodial and tutelary responsibility for children.' Vernonia, 515 U.S., at 656, 115 S. Ct. 2386. In particular, a finding of individualized suspicion may not be necessary when a school conducts drug testing.

Where, as in this case, a school yard search is conducted in good faith for the purpose of safety and security, as distinguished from a targeted search for evidence of illegal activity, the Court has no hesitancy in concluding that reasonable or individualized suspicion is not required. In T.L.O. the Court said:

>[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the . . . action was justified at its inception.' Terry v. Ohio, 392 U.S., at 20, 88 S. Ct., at 1879; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place, ibid

469 U.S. at 341, 105 S.Ct. at 742-743.

Here, the Principal confronted a situation in which a student on a bus claimed to have possession of a bomb. In these days of heightened sensitivity to recurring outbreaks of deadly violence in our schools,[6] comments that might once have been

---

[6] See Boim v. Fulton County School District, 494 F.3d 978, 983-984 (11th Cir. 2001) (Judge Dubina discusses "This climate of increasing school violence and government oversight . . .").

9

taken as foolish schoolboy exclamations must now be regarded as serious threats to safety and security.[7] Thus, even though Ms. Dustin had formed the subjective belief that the instant threat was not credible, the objective circumstances clearly compelled a search that was justified at its inception. The fact that the boy who claimed possession of a bomb did not have any explosive device on his person did not exclude the possibility that a bomb had been placed elsewhere on the bus or in another student's book bag. As Judge Dubina remarked in Boim, supra, "[w]e can only imagine what would have happened if the school officials, after learning of [the threat] did nothing about it . . ." and the threat was then carried out with resulting death or serious bodily harm. 494 F.3d at 984.

Moreover, the Court concludes with equal comfort that the search as conducted by Ms. Dustin "was reasonably related in scope to the circumstances which justified the interference in the first place." T.L.O., quoted supra. The searches were carried out within a few minutes, were limited to the students on the bus, and were further limited to their handbags or book bags where an explosive device might be concealed. This was reasonable. Indeed, anything less under the circumstances might well have been regarded as irresponsible.

The Court concludes, therefore, that there was no violation of the Plaintiff's Fourth or Fourteenth Amendment rights and that the Defendants' motion for summary

---

[7] The Sumter County School Board has established written procedures governing telephone bomb threats containing the conspicuous command: "Do Not Discount Any Bomb Threat!"

10

judgment (Doc. 26) will be granted. The Plaintiff's motion for summary judgment (Doc. 21) will be denied.

### Qualified Immunity

The Defendant Dustin has filed a separate, alternative motion for summary judgment (Doc. 25) on the ground that she is entitled to qualified immunity.

> A school official searching a student is 'entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment' Pearson v. Callahan, 555 U.S. ----, ----, 129 S.Ct. 808, 822, 172 L.Ed.2d 565 (2009). To be established clearly, however, there is no need that 'the very action in question [have] previously been held unlawful.' Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L.Ed.2d 818 (1999). The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that '[t]he easiest cases don't even arise.' K. H. Morgan, 914 F.2d 846, 851 (C.A.7 1990). But even as to action less than an outrage, 'officials can still be on notice that their conduct violates established law . . . in novel factual circumstances.' Hope v. Pelzer, 536 U.S, 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Safford United School District v. Redding, ____ U.S. ____, 129 S. Ct. 2633, 2643 (2009).

The Court has already determined, applying established Supreme Court jurisprudence, that the Plaintiff's constitutional rights were not violated. It necessarily follows, a fortiori, that there was no clearly established law in 2008 putting Defendant Dustin on notice that her conduct toward the Plaintiff was in deprivation of the Plaintiff's constitutional rights. The Defendant Dustin is thus entitled to qualified immunity even if it should be determined that the Court is wrong on the merits of the Plaintiff's claim. The Defendant Dustin's motion for summary judgment (Doc. 25) on

11

the ground of qualified immunity will also be granted as an alternative ground for the entry of final judgment in her behalf.

## Conclusion

1. The Defendants' motion for summary judgment (Doc. 26) is GRANTED.

2. The Defendant's motion for summary judgment (Doc. 25) on the ground of qualified immunity is GRANTED.

3. The Plaintiff's motion for summary judgment (Doc. 21) is DENIED.

4. The Clerk is Directed to enter final judgment in favor of the Defendants and against the Plaintiff with costs to be assessed according to law.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 24th day of September, 2010.

*[signature]*
UNITED STATES DISTRICT JUDGE


Copies to:   Counsel of Record
             Maurya McSheehy